UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

AHIB PAUL,                           :

                Petitioner,          :    07 Civ. 9462 (CM)(HBP)

     -against-                       :    REPORT AND
                                          RECOMMENDATION
ROBERT ERCOLE,                       :

                Respondent.          :

----------------------------------X

               PITMAN, United States Magistrate Judge

               TO THE HONORABLE COLLEEN MCMAHON, United States Dis-
trict Judge,

I.   Introduction

               Petitioner Ahib Paul seeks, by his pro se petition for
a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an Order
vacating the sentence imposed on him on September 23, 2003, after
a jury trial in the Supreme Court of the State of New York, Bronx
County (Webber, J.), for two counts of murder in the second
degree (N.Y. Penal L. §§ 125.25(1), (3)), and one count each of
manslaughter in the first degree (N.Y. Penal L. § 125.20(1)),
attempted robbery in the first degree (N.Y. Penal L. §§ 110,
160.15(2)), criminal possession of a weapon in the second degree
(N.Y. Penal L. § 265.03(2)), and criminal possession of a weapon

in the third degree (N.Y. Penal L. § 265.02(4)).  Pursuant to
that judgment, petitioner was sentenced as a second felony
offender to concurrent prison terms totaling 20 years to life.[1]
Petitioner is currently incarcerated pursuant to that judgment.

        For the reasons set forth below, I respectfully recom-
mend that the petition be denied.

II.  <u>Facts</u>

    A.  Facts Giving Rise to
        <u>Petitioner's Conviction</u>

        Petitioner's conviction arose out of the fatal shooting
of Derrick "Ginger" Thompson in the Bronx, New York on July 1,
2001.  The evidence offered at trial suggested that petitioner
shot Thompson as a result of a dispute over the ownership of a
spot from which marijuana was sold.

        In late June, 2001, Nancy Williams purchased marijuana
from petitioner and another man on East 169th Street in the Bronx

_____

        [1]The specific, concurrent sentences imposed for each count
of conviction were:  (1) an indeterminate sentence of 20 years to
life on the murder counts; (2) a determinate sentence of 20 years
on the manslaughter count; (3) a determinate sentence of ten
years on the attempted robbery count; (4) a determinate sentence
of 15 years on the count of criminal possession of a weapon in
the second degree, and (5) an indeterminate sentence of three and
one-half to seven years on the count of criminal possession of a
weapon in the third degree (Affidavit of Joshua Magri, sworn to
April 29, 2008 ("Magri Aff."), Ex. 2 at 1-2)

(Tr.[2] 241-45, 390-91).  Petitioner told Williams that he worked for Thompson, who was Williams' regular marijuana source (Tr. 219-21, 243-44, 392, 394-95).  Williams initially stated that she was not interested in purchasing marijuana from petitioner, but because petitioner's marijuana appeared to be packaged in the same manner as Thompson's, Williams concluded that petitioner really was working with Thompson and bought marijuana from him (Tr. 244-45, 391).

Shortly after the purchase, Williams tried the mari-juana, found that it did not produce the desired effect and characterized it as "garbage" (Tr. 245-46, 392).  About 45 minutes after her purchase from petitioner, she encountered Thompson in the vicinity of 553 East 169th Street; at the time petitioner and the individual who was with him when he had sold marijuana to Williams were close by (Tr. 245-46, 393-94).  Williams complained to Thompson about the quality of the mari-juana she had purchased from petitioner, who she still believed to be Thompson's associate (Tr. 246-47).  Thompson told Williams that he did not employ any sellers and that Williams should come directly to Thompson for marijuana (Tr. 246-47).  Thompson then asked petitioner why he and his associate were claiming to work

---

[2]"Tr." refers to the transcript of petitioner's trial.

3

for Thompson (Tr. 247).  Petitioner and his associate denied that they were passing themselves off as Thompson's associates, but several other individuals who were present confirmed Williams' claim (Tr. 247).   After a verbal altercation among Thompson, petitioner and petitioner's associate, the latter two left while Thompson continued to sell marijuana (Tr. 247-48).

On or about July 1, 2001, after purchasing marijuana from Thompson in the lobby of her building, Williams went to her apartment where she observed Thompson from a window selling marijuana across the street (Tr. 249-51).  She saw petitioner approach Thompson and exchange words (Tr. 251).  Although the exchange of words progressed to a physical altercation, it appeared to Williams that the two men were "horsing around," "like two boys having fun" (Tr. 252-54, 409-15).  The two men then walked away from each other (Tr. 253).

As petitioner was walking away from Thompson, Thompson threw a bottle at petitioner which struck the ground (Tr. 253-54).  Petitioner then walked back toward Thompson, pulled a gun from the area of his waist band and fired at Thompson (Tr. 254, 420).  When he was a few feet from Thompson, petitioner fired a second shot at Thompson (Tr. 434).  The second shot struck Thompson as he held his hands up in a futile attempt to block it (Tr. 255-56, 434-35).  After shooting Thompson, petitioner

4

searched his pockets (Tr. 256, 435-36), and then walked away with the individual with whom he had been selling marijuana a few days earlier (Tr. 256-57).

B.  <u>Petitioner's Trial</u>

In addition to the foregoing testimony from Williams, the prosecution offered testimony from Rachel Reyes, a 13-year old who lived on the third floor of 553 East 169th Street (Tr. 678-79).  Reyes testified that at approximately 9:00 p.m. on July 1, 2001, she heard an argument, looked out her window and saw Thompson holding a shopping bag and struggling with petitioner (Tr. 680-82, 774-77).  Reyes saw a black gun in petitioner's right hand and could also see that petitioner had dreadlocks (Tr. 683-84, 691).  Reyes heard petitioner demand the bag, and Thomson refused to surrender it (Tr. 683-84, 775-76).  Reyes then saw petitioner fire two shots at Thompson (Tr. 685-86).  The second shot was fired into the top of Thompson's neck and into the top of Thompson's right shoulder (Tr. 686).

The prosecution also offered the testimony of Luz San Jurjo, who resided on the fifth floor at 553 East 169th Street and was a friend of Thompson's (Tr. 35-37, 84).  At approximately 9:30 p.m. on July 1, 2001, San Jurjo heard two gunshots (Tr. 37).

She looked out the window and saw Thompson, with whom she was friendly, signaling for help with his hand (Tr. 38).

San Jurjo went down to the street, knelt beside Thompson and held his hand (Tr. 38).  San Jurjo testified that Thompson said to her "Ma, don't let me die. . . . I'm going to die. . . . the dred, the dred, the dred, Jermaine, he shot me . . . Mom, Dreds did it.  I'm going to die" (Tr. 38-39, 90, 259).

Williams, who also went down to the street after the shooting, testified to the same dying declaration (Tr. 259).

C.  State Court
    <u>Proceedings</u>

Petitioner's trial commenced on July 9, 2003 and ended on July 31, 2003, when the jury found him guilty of the offenses listed above (Tr. 1; Magri Aff. ¶ 5).  On September 23, 2003, Justice Webber adjudicated petitioner a second felony offender and sentenced him as indicated above (Magri Aff. ¶ 6 & n.1).

Petitioner appealed his conviction to the Appellate Division of the Supreme Court, First Department, asserting four claims:  (1) the admission of Thompson's dying declaration violated petitioner's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution and deprived him of due process of law in violation of the Fourteenth

Amendment to the United States Constitution; (2) the indetermi-
nate sentence of 20 years to life was excessive and should be
reduced in the interests of justice; (3) the sentence for crimi-
nal possession of a weapon in the third degree was illegal and
(4) the imposition of a post May 13, 2003 DNA databank fee as
part of the sentence violated the prohibition against ex post
facto laws set forth in the Article I, Section 10 of the United
States Constitution (Ex. 1 to Magri Aff. at i, 2).

      The Appellate Division vacated the sentence imposed on
petitioner for criminal possession of a weapon in the third
degree and that portion of the sentence that imposed a DNA
databank fee.  In all other respects, however, the conviction and
sentence were affirmed.  People v. Paul, 25 A.D.3d 165, 803
N.Y.S.2d 66 (1st Dep't 2005).

      After reciting the facts of the case, the Appellate
Division first concluded that Thompson's dying declaration met
the criteria under state law to be admissible as an exception to
the prohibition against hearsay because the evidence established
that Thompson made the statement with an awareness of impending
death, and the statement was, therefore, presumed to be reliable.
25 A.D.3d at 167-68, 803 N.Y.S.2d at 68-69.  Turning to peti-
tioner's claim that Thompson's hearsay statement violated the
Confrontation Clause, the Court found that "defendant's Confron-

tation Clause argument is unpreserved, and we decline to review it in the interest of justice."  25 A.D.3d at 168, 803 N.Y.S.2d at 69.  The Court went on to reason that if it were to review the Confrontation Clause claim in the interest of justice, it would find the claim without merit.  In reaching this conclusion, the Court first acknowledged that the prohibition against the use of hearsay statements set forth in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) was limited to "testimonial" statements which the Supreme Court did not exhaustively define.  The Appellate Division then went on to explain that the New York cases decided after <u>Crawford</u> appeared to limit "testimonial" statements to statements prepared by a governmental agency for use in court and to exclude from <u>Crawford</u>'s prohibition "all 'private accusations made out of court by one private person to another.'"  25 A.D.3d at 169, 803 N.Y.S.2d at 69, <u>quoting</u> Paul Shechtman, <u>Crawford & the Meaning of Testimonial</u>, N.Y.L.J., June 23, 2004 at 4, col. 1. Since Thompson's dying declaration was not elicited by a government agency for use in court, the Appellate Division reasoned it would not fall within <u>Crawford</u>'s prohibition.  25 A.D.3d at 169-70, 803 N.Y.S.2d at 70.

The Court disposed of petitioner's remaining claims as follows:

> Finally, as the People concede, the indeterminate
> term for the third-degree weapon conviction was unlaw-
> ful, and we therefore replace it with a determinate
> sentence.  As the People also concede, since the crime
> was committed prior to the effective date of the legis-
> lation providing for the imposition of a DNA databank
> fee (Penal Law § 60.35 [1] [a] [v] [former (1) (e)]),
> that fee should not have been imposed.  We perceive no
> basis for reducing the sentence.

15 A.D.3d at 171, 803 N.Y.S.2d at 71.

Petitioner subsequently sought leave to appeal to the New York Court of Appeals, asserting all claims asserted before the Appellate Division and also asserting that the Appellate Division "abused its discretion under its interest of justice jurisdiction as a matter of law in exercising this jurisdiction to affirm a conviction" (Ex. 4 to Magri Aff.; Ex. 5 to Magri Aff. at 3).  The New York Court of Appeals denied leave to appeal on December 30, 2005.  People v. Ahib, 6 N.Y.3d 752, 843 N.E.2d 1160, 810 N.Y.S.2d 420 (2005); People v. Paul, 6 N.Y.3d 757, 843 N.E.2d 1165, 810 N.Y.S.2d 425 (2005).

On or about September 12, 2006, petitioner filed a pro se petition for a writ of error coram nobis in the Appellate Division, First Department, in which he claimed that his appellate counsel had been ineffective for failing to assert that his trial counsel had been ineffective for failing to preserve petitioner's Confrontation Clause objection (Ex. 8 to Magri Aff.).  The Appellate Division denied the application without

9

opinion on March 13, 2007 (Ex. 10 to Magri Aff.).  The New York

Court of Appeals denied leave to appeal on August 22, 2007.

People v. Ahib, 9 N.Y.3d 872, 874 N.E.2d 751, 842 N.Y.S.2d 784

(2007).


      D.  The Pending
         Petition


      The pending petition asserts six claims which peti-

tioner raised in his direct appeal and in his petition for a writ

of error coram nobis.  Petitioner states these claims as follows:

> 1.  Whether the admission of hearsay testimony
> that the decedent identified [petitioner] as the
> shooter before he dies violated [petitioner's] right to
> confrontation and due process?  Const., Amend. VI, XIV;
> N.Y. Const., art. I, § 6.

> 2.  Whether appellant's [sentence] of 20 years to
> life imprisonment was excessive and should be reduced
> in the interest of justice.

> 3.  Whether appellant's sentence of third-degree
> criminal possession of a weapon is illegal?

> 4.  Whether the imposition of the post 5/13/03 DNA
> databank fee violates the Ex-Post Facto Clause?  U.S.
> Const., art. 1, § 10.

*      *      *

> 5.  Whether the Appellate [D]ivision abused its
> discretion under its interest of justice jurisdiction
> as a matter of [l]aw where it improperly exercised its
> interest of justice jurisdiction in order to uphold a
> conviction?

> 6.  Grounds for:  A Writ of Error Coram Nobis,
> PAUL WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF APPEL-
> LATE COUNSEL BY VIRTUE OF APPELLATE COUNSEL'S FAILURE
> TO RAISE A MERITORI[O]US RECORD BASED [ON] INEFFECTIVE
> ASSISTANCE OF TRIAL COUNSEL CLAIM.  U.S. Const. Amend.
> VI[,] XIV; N.Y. Const. art. 1 §.  [Sic].

(Petition at Appendix).

III.  <u>Analysis</u>

A.  <u>Non-Cognizable Claims</u>

A fundamental aspect of habeas corpus review is that only violations of federal law are cognizable in a federal habeas corpus proceeding; a violation of state law provides no basis for habeas relief.  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (internal quotations and citations omitted)); <u>accord</u> <u>Ortiz v. N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d 149, 157 (2d Cir. 2009); <u>Howard v. Walker</u>, 406 F.3d 114, 121 (2d Cir. 2005) (noting that a challenge to a conviction obtained in violation of state law is not cognizable in federal court); <u>DiGuglielmo v. Smith</u>, 366 F.3d 130, 136-37 (2d Cir. 2004) (same); <u>Urena v. Lape</u>, 373 F. Supp. 2d 449, 454-55 (S.D.N.Y. 2005) (Marrero, D.J.) (same); <u>Smith v. Artus</u>, 03 Civ.

11

9819 (AKH), 2005 WL 1661104 at *7 (S.D.N.Y. July 14, 2005)
(Hellerstein, D.J.) (same); <u>Adams v. Greiner</u>, 02 Civ. 6328 (GEL),
2004 WL 912085 at *2 (S.D.N.Y. Apr. 29, 2004) (Lynch, D.J.)
("Habeas corpus is not an extension of the appeals process in the
state court.  Rather, it is a remedy for violations of a defen-
dant's rights under the federal constitution, and a very narrow
remedy at that.").

Petitioner's claims concerning the length of his
sentence and the Appellate Division's alleged abuse of discretion
concerning its interest of justice jurisdiction both fail to
assert violations of federally protected rights.

     1.   Excessive
        <u>Sentence Claim</u>

The petition does not identify what federal right is
allegedly violated by the sentence imposed on petitioner; it does
not expressly reference the Eight Amendment nor does it use
language suggesting that plaintiff is attempting to allege an
Eighth Amendment violation.  Rather than assert a constitutional
claim, it appears that petitioner is attempting to reprise the
argument he asserted before the Appellate Division, namely that
his sentence should be reduced in the interest of justice (<u>see</u>
Ex. 1 to Magri Aff. at 44 & 47 (Petitioner argued that the

Appellate Division "should, in its discretion and in the interest of justice, reduce [petitioner's] sentence to the minimum of 15 years' to life imprisonment on the second-degree murder counts and 15 years on the first-degree manslaughter count."))

Although New York's Appellate Division has discretion to reduce a sentence in the interest of justice, see N.Y. Crim. Proc. L. § 470.15(3), (6)(b), a federal habeas court considering a state-court conviction has no such power, and a claim that a sentence should be reduced in the interest of justice does not allege a violation of a federally protected right.  See Stallings v. Woods, 04 CV 4714 (RLM), 2006 WL 842380 at *22 (E.D.N.Y. Mar. 27, 2006), citing Medina v. Greene, 03 Civ. 8646 (DC), 2004 WL 2809196 at *4 (S.D.N.Y. Dec. 7, 2004) (Chin, D.J.) (petitioner "did not fairly present the excessive sentence claim in federal constitutional terms" by appealing to the Appellate Division's power under N.Y. Crim. Proc. Law § 470.15, to reduce an excessive sentence in the interest of justice); Rivera v. Greiner, 272 F. Supp. 2d 197, 201 (E.D.N.Y. 2003); see also White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam).  Petitioner's claim concerning the length of his sentence is not, therefore, cognizable in this proceeding.[3]

---

[3]Petitioner's brief to the Appellate Division does contain
(continued...)

Moreover, even if I read petitioner's claim to assert that his sentence is so disproportionately long that it is cruel and unusual and a violation of the Eighth Amendment, see Herrera v. Artuz, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (Baer, D.J.) (construing excessive sentence claim of pro se habeas petitioner to assert an Eighth Amendment violation), it fails on the merits. A sentence within the range established by state law is ordinarily not subject to an Eighth Amendment challenge. White v. Keane, supra, 969 F.2d at 1383; Diaz v. Herbert, 317 F. Supp. 2d 462, 479-80 (S.D.N.Y. 2004) (Marrero, D.J.); Brown v. Goord, 02 Civ. 2122 (NRB), 2002 WL 31093611 at *5 (S.D.N.Y. Sept. 13, 2002) (Buchwald, D.J.); Espinal v. Barkely, 95 Civ. 1214 (HB), 1996 WL 673833 at *1 (S.D.N.Y. Nov. 20, 1996) (Baer, D.J.); Rodriguez v. O'Keefe, 96 Civ. 2094 (LLS), 1996 WL 428164 at *7 (S.D.N.Y. July 31, 1996) (Stanton, D.J.), aff'd mem., 122 F.3d 1057 (2d Cir.

---

[3](...continued)
the following passing reference to the Eight Amendment: "'[A]lways in the background of the sentencing process are the requirements of the Eighth Amendment,' [People v. Notey, 72 A.D.2d 279, 283 (2nd Dep't 1980)] which 'prohibits [sic] imposition of a sentence that is grossly disproportionate to the severity of the crime.' Rummel v. Estelle, 445 U.S. 263, 271 (1980)." (Ex. 1 to Magri Aff. at 45). However, given the fact that petitioner's concluding sentence in this section of his brief requested that the Appellate Division "reduce his sentence in the interest of justice (Ex. 1 to Magri Aff. at 47), his brief cannot be fairly said to assert an Eighth Amendment claim. Petitioner's brief nowhere suggests that the Eighth Amendment required that his sentence be reduced.

1997); see Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) (Koeltl, D.J.) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."); see also, e.g., Townsend v. Burke, 334 U.S. 736, 741 (1948) (severity of sentence generally not reviewable on habeas).

An indeterminate sentence of twenty years to life for murder in the second degree is clearly permitted under New York Law.  N.Y. Penal L. §§ 70.00(2)(a), (3)(a)(i), 125.25 (authorizing indeterminate sentence of up to 25 years to life for murder in the second degree).  In addition, sentences of equal or longer duration for the same crime have routinely been upheld in the face of challenges under the Eighth Amendment.  Ayala v. Walsh, 05-CV-1497 (JS), 2009 WL 4282034 at *9 (E.D.N.Y. Nov. 23, 2009) (upholding a sentence of 25 years to life for murder in the second degree); Garrett v. Smith, 05-CV-3374 (JFB), 2006 WL 2265094 at *12 (E.D.N.Y. Aug. 8, 2006)("Petitioner was sentenced to 25 years to life imprisonment [for second degree murder] and, as his sentence falls within the range established by state law, his claim is not cognizable for federal habeas corpus review."); Williams v. Mantello, 378 F. Supp. 2d 229, 240-41 (W.D.N.Y. 2005)(upholding a sentence of 25 years to life for second degree

15

murder); <u>Tobias v. Portuondo</u>, 367 F. Supp. 2d 384, 398 (W.D.N.Y. 2004)(same); <u>Collins v. Greiner</u>, 02-CV-4727 (JBW), 2003 WL 22953067 at *12 (E.D.N.Y. Oct. 15, 2003)(same); <u>Pina v. Kuhlmann</u>, 239 F. Supp. 2d 285, 288-89 (E.D.N.Y. 2003); <u>see</u> <u>also</u> <u>Duran v. Phillips</u>, 04 Civ. 302 (LTS)(FM), 2008 WL 3919195 at *9 (S.D.N.Y. Aug. 22, 2008) (Swain, D.J. & Maas, M.J.) (sentence of thirty-seven and one-half years to life for convictions of murder in the second degree and attempted murder in the second degree did not raise an Eighth Amendment issue).

Thus, petitioner is not entitled to any relief in connection with his claim that his sentence is excessive.

### 2. The Appellate Division's Alleged Abuse of Discretion

Petitioner's claim that the Appellate Division abused its discretion with respect to its interest-of-justice jurisdiction when it exercised that jurisdiction to affirm his conviction also fails to assert the violation of a right protected by federal law.

As is true in most jurisdictions, a criminal defendant in New York ordinarily waives any objection to the admissibility of evidence if he or she fails to make a contemporaneous objection at trial.  N.Y. Crim. Proc. L. § 470.05(2).  Nevertheless,

New York has granted the Appellate Division the discretion to review objections to evidence that were not preserved at trial when doing so is in the interest of justice.  N.Y. Crim. Proc. L. § 470.15(6)(a).  This discretion, however, is purely a matter of state law.  Gayle v. LaFevre, 613 F.2d 21, 22 n.3 (2d Cir. 1980) ("Under section 470.15(3) of the New York Criminal Procedure Law, the state intermediate appellate court may reverse or modify a judgment as a matter of discretion in the interest of justice . . . . Such discretionary determinations are apparently not dictated by constitutional considerations, but rather constitute exercises of the appellate court's supervisory powers.").

In addition, this claim ignores the record.  As discussed at pages 23-25, below, the Appellate Division did not rely on its-interest-of-justice jurisdiction to resolve petitioner's Crawford claim on the merits.  Rather, it expressly rejected the claim as unpreserved and expressly declined to review the claim pursuant to its interest of justice jurisdiction.  People v. Paul, supra, 25 A.D.3d at 168, 803 N.Y.S.2d at 69.  Clearly, the Appellate Division went on to discuss the merits of petitioner's Crawford claim in dicta, but that dicta does not constitute a decision on the merits of the claim.  Fernandez v. Smith, 558 F. Supp. 2d 480, 504 (S.D.N.Y. 2008) (Chin, D.J.); Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007).

Thus, even if the Appellate Division had relied on its interest-of-justice jurisdiction to reach the merits of petitioner's <u>Crawford</u> (which it did not), any error was an error of state law only and is not cognizable in a federal habeas proceeding.

B.   <u>Moot Claims</u>

Two of petitioner's claims are moot because the Appellate Division has already granted petitioner the relief he was seeking on those claims.

In the Appellate Division, petitioner prevailed on his claim that the sentence imposed for the count of criminal possession of a weapon in the third-degree was illegal and that the imposition of DNA databank fee violated the prohibition against <u>ex-post</u> <u>facto</u> laws.  Since petitioner has received all the relief he sought on these two claims, these claims are moot.

C.   <u>Procedural Bar</u>

Respondent argues that petitioner's next claim -- that the admission of Thompson's dying declaration violated the Confrontation Clause -- is procedurally barred because the Appellate Division rejected the claim on the ground that petitioner failed to a make a contemporaneous objection to the

admission of the evidence.  People v. Paul, supra, 25 A.D.3d at
168, 803 N.Y.S.2d at 69.

A habeas petitioner's constitutional claim can be
procedurally barred if it is not asserted in state court proceed-
ings in accordance with state procedural requirements and the
state courts rely on that violation of state procedural require-
ments to reject the claim.  As the Court of Appeals for the
Second Circuit has explained:

> The independent and adequate state ground doctrine
> first arose in the context of direct appeals to the
> Supreme Court from final judgments of the state courts.
> Under that doctrine the Supreme Court "will not review
> a question of federal law decided by a state court if
> the decision of that court rests on a state law ground
> that is independent of the federal question and ade-
> quate to support the judgment."  Coleman v. Thompson,
> 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
> (1991).  Moreover, "[t]his rule applies whether the
> state law ground is substantive or procedural."  Id.
>
> *        *        *
>
> The doctrine also applies in the context of fed-
> eral courts reviewing applications for a writ of habeas
> corpus . . . .  [I]nvoking principles of comity and
> federalism . . . federal habeas courts faced with an
> independent and adequate state ground of decision defer
> in the same manner as does the Supreme Court on direct
> review.

Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Breard
v. Kindler, --- U.S. ---, ---, 130 S.Ct. 612, 614 (2009) ("A
federal habeas court will not review a claim rejected by a state
court if the decision of [the state] court rests on a state law

ground that is independent of the federal question and adequate to support the judgment.'" (inner quotations omitted)); Cone v. Bell, --- U.S. ---, --- 129 S.Ct. 1769, 1780 (2009) (same); Bierenbaum v. Graham, Docket No. 08-1375-pr, 2010 WL 2036951 at *9 (2d Cir. May 25, 2010) (same); Cotto v. Herbert, 331 F.3d 217, 238-41 (2d Cir. 2003); Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002), citing Coleman v. Thompson, 501 U.S. 722, 729-31 (1991)("[I]t is settled law that an independent and adequate state law ground for a state court conviction cannot be disturbed on habeas."); Brown v. State of New York, 04-CV-1087 (NG)(VVP), 2006 WL 3085704 at *2 (E.D.N.Y. Oct. 30, 2006)("When a habeas corpus petitioner defaults a federal claim in state court . . . by failing to preserve the claim for state appellate review . . . , the independent and adequate state ground doctrine bars federal habeas corpus review."); Rivera v. Moscicki, 03 Civ. 5810 (SAS), 2005 WL 2347840 at *2 (S.D.N.Y. Sept. 22, 2005) (Scheindlin, D.J.) ("A federal court generally may not review a state court decision that expressly relies on a procedural default as an independent and adequate state ground for dismissal.").

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar:

20

> In Harris [v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103
> L.Ed.2d 308 (1989)], the Court held that "a procedural
> default does not bar consideration of a federal claim
> on either direct or habeas review unless the last state
> court rendering a judgment in the case clearly and
> expressly states that its judgment rests on a state
> procedural bar." Harris, 489 U.S. at 263, 109 S.Ct.
> 1038 (internal quotation marks omitted). We apply the
> Long/Harris presumption to the last "reasoned state
> judgment" . . . . See Ylst v. Nunnemaker, 501 U.S.
> 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000). See also

Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001)("We have

repeatedly stated that in order for federal habeas review to be

procedurally barred, a state court must actually have relied on a

procedural bar as an independent basis for its disposition of the

case, and the state court's reliance on state law must be unam-

biguous and clear from the face of the opinion.").

As long as the state court relies on a procedural bar

as an independent basis for its decision, a claim will be proce-

durally barred on federal habeas review even where a state court

addresses the merits of the claim in the alternative. As the

Court of Appeals for the Second Circuit has noted:

> This court has held that "federal habeas review is
> foreclosed when a state court has expressly relied on a
> procedural default as an independent and adequate state
> ground, even where the state court has also ruled in
> the alternative on the merits of the federal claim."
> Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990);
> Harris, 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10
> ("[A] state court need not fear reaching the merits of

a federal claim in an <u>alternative</u> holding."); <u>Wedra v. Lefevre</u>, 988 F.2d 334, 338-39 (2d Cir. 1993).

<u>Glenn v. Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996). <u>See also</u> <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810 (2d Cir. 2000); <u>Robles v. Superintendent of Elmira Facility</u>, 07 Civ. 596 (LBS), 2007 WL 2600857 at *3 n.3 (S.D.N.Y. Aug. 30, 2007) (Sand, D.J.); <u>Ashley v. Burge</u>, 05 Civ. 4497 (JGK), 2006 WL 3327589 at *5 n.5 (S.D.N.Y. Nov. 3, 2006) (Koeltl, D.J.).

However, even where the last reasoned decision of the state court expressly rejects a federal constitutional claim on a state procedural ground, federal habeas corpus review will not be precluded if (1) the state procedural ground is not independent and adequate, <u>see</u> <u>Jimenez v. Walker</u>, 458 F.3d 130, 138 (2d Cir. 2006); <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 241-42 (2d Cir. 2006); <u>Cotto v. Herbert</u>, <u>supra</u>, 331 F.3d at 238-39; (2) there is cause for and prejudice from petitioner's failure to assert his claims in accordance with state procedural law, or (3) a failure to consider the claim would result in a fundamental miscarriage of justice. <u>Schlup v. Delo</u>, 513 U.S. 298, 324-27 (1995); <u>Coleman v. Thompson</u>, <u>supra</u>, 501 U.S. at 748-50; <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989); <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005). To establish a fundamental miscarriage of justice, a habeas petitioner must show that a constitutional violation

probably resulted in his conviction despite his actual innocence.
United States v. Olano, 507 U.S. 725, 736 (1993) ("In our collat-
eral-review jurisprudence, the term 'miscarriage of justice'
means that the defendant is actually innocent."); Sweet v.
Bennett, 353 F.3d 135, 141 (2d Cir. 2003) (a "habeas petitioner
may avoid [a procedural] default . . . by showing . . . that
failure to consider the claim will result in miscarriage of
justice, i.e., the petitioner is actually innocent.").

     The Appellate Division rejected petitioner's Confronta-
tion Clause claim, finding that petitioner failed to make any
contemporaneous objection[4] to the testimony:  "Initially, we note
that defendant's Confrontation Clause argument is unpreserved and
we decline to review it in the interest of justice.  Were we to
review it, for the reasons that follow we would find no basis fo
reversal."  People v. Paul, supra, 25 A.D.3d at 169, 803 N.Y.S.2d
at 69; see also Tr. 38-39, 90, 258-59 (Thompson's dying declara-
tions elicited without objection).  The language used by the
Appellate Division, or language very close to it, has repeatedly
been found to result in a procedural bar, notwithstanding a

_____

     [4]Under New York's contemporaneous objection rule, an issue
is, in most cases, properly preserved for appellate review only
if the appellant raised an objection at trial.  N.Y. Crim. Proc.
L. § 470.05(2); People v. Nuccie, 57 N.Y.2d 818, 819, 441 N.E.2d
1111, 1111, 455 N.Y.S.2d 593, 593 (1982).

subsequent discussion of the merits of the claim in <u>dicta</u>.
<u>Fernandez v. Smith</u>, <u>supra</u>, 558 F. Supp. 2d at 504; <u>Brown v.
Perlman</u>, 07 Civ. 8672 (RMB)(AJP), 2008 WL 2009220 at *16-*18
(S.D.N.Y. May 8, 2008) (Report & Recommendation) (Peck, M.J.),
<u>adopted</u> <u>at</u>, 2008 WL 2545066 (S.D.N.Y. June 28, 2008) (Berman,
D.J.),; <u>Bridgewater v. Walker</u>, 99 Civ. 2420 (RB)(KNF), 2003 WL
25795215 at *10-*11 (S.D.N.Y. Jan. 14, 2003) (Report & Recommen-
dation) (Fox, M.J.), <u>adopted</u> <u>at</u>, 2003 WL 21738978 (S.D.N.Y. July
28, 2003) (Berman, D.J.); <u>Morales v. Artuz</u>, 98 Civ. 6558 (JGK),
2000 WL 1693563 at *5-*9 (S.D.N.Y. Nov. 13, 2000) (Koeltl, D.J.);
<u>Means v. Barkley</u>, 98 Civ. 7603 (DLC), 2000 WL 5020 at *4-*6
(S.D.N.Y. Jan. 4, 2000) (Cote, D.J.); <u>see</u> <u>Bell v. Miller</u>, <u>supra</u>,
500 F.3d at 155 (State court's denial of claim on state proce-
dural grounds followed by the statement "But if the merits were
reached, the result would be the same" did not constitute an
adjudication of the merits of the claim.).  <u>Cf</u>. <u>Zarvela v. Artuz</u>,
364 F.3d 415, 417 (2d Cir. 2004) (State court's finding that
"petitioner's claim [is] unpreserved, and in any event, without
merit" is an adjudication of the merits of the claim that does
not result in a procedural bar.).  Thus, petitioner's Confronta-
tion Clause claim is procedurally barred.

       The Court of Appeals for the Second Circuit has "ob-
served and deferred to New York's consistent application of its

contemporaneous objection rules." <u>Garcia v. Lewis</u>, <u>supra</u>, 188 F.3d at 79; <u>see</u> <u>also</u> <u>Glenn v. Bartlett</u>, <u>supra</u>, 98 F.3d at 724-25. Moreover, courts in this Circuit have held that a finding of procedural default based on a petitioner's failure to make a contemporaneous objection is an adequate and independent state ground sufficient to bar habeas review. <u>E.g.</u>, <u>Vargas v. Keane</u>, 86 F.3d 1273, 1280 (2d Cir. 1996); <u>Brown v. Perlman</u>, <u>supra</u>, 2008 WL 2009220 at *17 (collecting cases); <u>Cruz v. Filion</u>, 456 F. Supp. 2d 474, 481 (S.D.N.Y. 2006) (Marrero, D.J.); <u>Reinoso v. Artuz</u>, 97 Civ. 3174 (MGC), 2002 WL 31108198 at *2 (S.D.N.Y. Sept. 23, 2002) (Cedarbaum, D.J.). Petitioner makes no claim that there is cause for or prejudice from his failure to object to the admission of the dying declarations nor does he claim that a failure to reach the merits of the claim will result in a funda-mental miscarriage of justice.

Finally, even if petitioner's Confrontation Clause were not procedurally barred, it would not provide a basis for habeas relief. As explained below in connection with petitioner's ineffective-assistance claim, habeas corpus relief is appropriate only where the state court's decision "was contrary to, or involved an unreasonable application of, <u>clearly established Federal law, as determined by the Supreme Court of the United States</u> . . . ." 28 U.S.C. § 2254(d) (emphasis added). After the

Supreme Court's decision in <u>Crawford</u>, there has never been a
determination by the Supreme Court, clear or otherwise, that the
admission of a dying declaration violates the Confrontation
Clause.  Thus, the admission of a dying declaration could not be
contrary to, or involve an unreasonable application of, clearly
established federal law as determined by the Supreme Court.
<u>Nesmith v. Bradt</u>, 08 Civ. 6546 (SHS)(KNF), 2009 WL 3189346 at *5
(S.D.N.Y. Oct. 5, 2009) (Report & Recommendation) (Fox, M.J.),
<u>adopted at</u>, 2010 WL 447067 (S.D.N.Y. Feb. 9, 2010) (Stein, D.J.);
<u>Beverly v. Buss</u>, 3:07 Civ. 135, 2007 WL 1662771 at *4 (N.D. Ind.
June 4, 2007).  In addition, although the Supreme Court has not
determined whether a dying declaration violates the Confrontation
Clause, it has indicated in <u>dicta</u> that the admission of such
declarations is probably an historical exception to the Confron-
tation Clause.  <u>Crawford v. Washington</u>, <u>supra</u>, 541 U.S. at 56,
n.6.[5]

---

[5]Additional support for the proposition that the dying
declarations in issue here are not testimonial and do not violate
the Confrontation Clause can be found in the fact that
testimonial declarations are usually "statement[s] produced
through the '[i]nvolvement of government officers' and with an
'eye towards trial' . . . ." <u>United States v. Feliz</u>, 467 F.3d
227, 232 (2d Cir. 2006), <u>quoting</u> <u>Crawford v. Washington</u>, <u>supra</u>,,
541 U.S. at 56 n.7.  Government officials were not involved in
any way in eliciting the dying declarations made by Thompson.

Thus, petitioner's Confrontation Clause Claim should be dismissed as being procedurally barred.

D.   Ineffective-Assistance
     of Appellate Counsel

Petitioner's final claim is that his appellate counsel was ineffective for failing to argue on appeal that his trial counsel was ineffective for not preserving petitioner's Confrontation Clause claim.

1.   Standard of Review

A habeas petitioner must meet a stringent standard before a federal court can issue the writ.  Specifically, habeas relief may be granted only when the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d)(1).

The Supreme Court has explained these alternative standards as follows:

> First, we have explained that a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a

result different from our precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  See also <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002) (<u>per</u> <u>curiam</u>). . . .

Second, [petitioner] can satisfy § 2254(d) if he can demonstrate that the [State] Court's decision involved an "unreasonable application" of clearly established law.  As we have explained:

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  See <u>Bell v. Cone</u>, 535 U.S. 685, 698-699 (2002); <u>Williams</u>, <u>supra</u>, at 411.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002) (<u>per</u> <u>curiam</u>).

<u>Price v. Vincent</u>, 538 U.S. 634, 640-41 (2003); <u>accord</u> <u>Waddington</u> <u>v. Sarausad</u>, --- U.S. ---, ---, 129 S.Ct. 823, 831 (2009); <u>Brown</u> <u>v. Payton</u>, 544 U.S. 133, 141 (2005); <u>see</u> <u>also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-72 (2003); <u>Bierenbaum v. Graham</u>, <u>supra</u>, 2010 WL 2036951 at *9; <u>Hoi Man Yung v. Walker</u>, 468 F.3d 169, 176 (2d Cir. 2006); <u>Hawkins v. Costello</u>, 460 F.3d 238, 242-43 (2d Cir. 2006); <u>Brown v. Artuz</u>, 283 F.3d 492, 500-01 (2d Cir. 2002).

In addition to the definition of "unreasonable application" set forth above, a state court may unreasonably apply Supreme Court precedent "if the state court unreasonably extends a legal rule established by the Supreme Court or if it unreasonably fails to extend a legal rule to a context in which the rule

28

reasonably should apply." Serrano v. Fischer, 412 F.3d 292, 296-97 (2d Cir. 2005). "Unreasonableness is determined by an 'objective' standard." Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005), quoting Williams v. Taylor, 529 U.S. 362, 409 (2000); Hawkins v. Costello, supra, 460 F.3d at 242-43.

Both the "contrary to" and "unreasonable application" clauses "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, supra, 529 U.S. at 412. "[C]learly established [f]ederal law . . . refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (internal quotations omitted); accord Thaler v. Haynes, 130 S. Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."). "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002); Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S.Ct. 1312 (2009). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung

v. Walker, 341 F.3d 104, 110 (2d Cir. 2003); accord DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002).

A ruling that is clearly erroneous is not necessarily a ruling that constitutes an unreasonable application of federal law. Lockyer v. Andrade, supra, 538 U.S. at 75 (The "objectively unreasonable" and "clearly erroneous" standards "are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unrea-sonableness."); Davis v. Grant, supra, 532 F.3d at 140; Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003). However, "'the increment [of error beyond clear error] need not be great; otherwise, habeas relief would be limited to state court deci-sions so far off the mark as to suggest judicial incompetence.'" Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009), cert. denied, 130 S.Ct. 739 (2009), quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

To be entitled to the deferential standard of review under either sub-paragraph of subsection 2254(d), the state courts must have resolved the petitioner's claims "on the mer-its." Cotto v. Herbert, supra, 331 F.3d at 230; see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) ("[I]n order for this deferential standard of § 2254 to apply, we must first determine that the state court considered [petitioner's claim] on its

merits."); <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir. 2001).

The Second Circuit has instructed habeas courts to "classify" a state court decision as either:  (1) "fairly appearing to rest primarily on federal law or to be interwoven with federal law"; or (2) "fairly appearing to rest primarily on state procedural law." <u>Jimenez v. Walker</u>, 458 F.3d 130, 145 (2d Cir. 2006).  "If the state court's decision falls into the first category, and does not 'contain a clear statement of reliance on a state procedural bar,' the decision must be treated as having been made on the merits." <u>Mateo v. Fishkill Corr. Facility</u>, 04 Civ. 3420 (DGT), 2007 WL 2362205 at *5 (E.D.N.Y. Aug. 14, 2007), <u>quoting</u> <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 138.  To make this classification, habeas courts in this circuit examine "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." <u>Jimenez v. Walker</u>, <u>supra</u>, 458 F.3d at 145 n.16.

Petitioner asserted his claim of ineffective assistance of appellate counsel by way of a petition for a writ of error coram nobis (Ex. 8 to Magri Aff.).  Although the petition was denied without opinion (Ex. 10 to Magri Aff.), the prosecution's opposition to the petition did not remotely suggest any proce-

dural defect (Ex. 9 to Magri Aff.).  Under these circumstances,
the state court's decision constitutes a decision on the merits
and is subject to the AEDPA's deferential standard of review.
Herrera v. Senkowski, 77 F. App'x 549, 551 (2d Cir. 2003);
Aparicio v. Artuz, 269 F.3d 78, 92-94 (2d Cir. 2001) (denial of
claims without opinion but without indicating that denial was on
procedural grounds is adjudication on the merits); see Sellan v.
Kuhlman, supra, 261 F.3d at 311 ("Nothing in the phrase 'adjudi-
cated on the merits' requires the state court to have explained
its reasoning process").

            2.   Merits of Petitioner's
                 Ineffective-Assistance Claim

        In order to prevail on an ineffective-assistance-of-
counsel claim, a habeas petitioner must meet the now-familiar,
two-part test set forth in Strickland v. Washington, 466 U.S.
668, 686-87 (1984).

            The benchmark for judging any claim of ineffectiveness
            must be whether counsel's conduct so undermined the
            proper functioning of the adversarial process that the
            trial cannot be relied on as having produced a just
            result.

                        *       *       *

            A convicted defendant's claim that counsel's
            assistance was so defective as to require reversal of a
            conviction . . . has two components.  First, the defen-
            dant must show that counsel's performance was defi-

                                    32

cient.  This requires showing that counsel made errors
so serious that counsel was not functioning as the
"counsel" guaranteed the defendant by the Sixth Amend-
ment.  Second, the defendant must show that the defi-
cient performance prejudiced the defense.  This re-
quires showing that counsel's errors were so serious as
to deprive the defendant of a fair trial, a trial whose
result is reliable.  Unless a defendant makes both
showings, it cannot be said that the conviction . . .
resulted from a breakdown in the adversary process that
renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid

v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v.

United States, 202 F.3d 486, 488 (2d Cir. 2000); Guerrero v.

United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v.

United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v.

Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).  This same standard

applies to claims of ineffective assistance of appellate counsel.

Mercer v. Herbert, 133 F. Supp. 2d 219, 238 (W.D.N.Y. 2001) ("A

claim for ineffective assistance of appellate counsel is evalu-

ated upon the same standard as is a claim of ineffective assis-

tance of trial counsel.").  See also Mayo v. Henderson, 13 F.3d

528, 533 (2d Cir. 1994); Hernandez v. Edwards, 98 Civ. 6704

(MBM), 2001 WL 575594 at *4 (S.D.N.Y. May 29, 2001) (Mukasey,

D.J.).

        In determining whether counsel's performance was

objectively deficient, courts "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, supra, 466 U.S. at 689 (internal quotation marks omitted).

In the appellate context, "it does not suffice 'for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument.'" McKee v. United States, supra, 167 F.3d at 106, quoting Mayo v. Henderson, supra, 13 F.3d at 533. "Rather, it is the hallmark of effective appellate advocacy to choose wisely which claims are brought on appeal." Fletcher v. Mann, 956 F. Supp. 168, 173 (N.D.N.Y. 1997), aff'd mem., 165 F.3d 13 (2d Cir. 1998) (internal quotation marks omitted). Thus,

> [i]n assessing the reasonableness of the arguments posed on appeal versus other possible nonfrivolous arguments, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. . . . Generally, only when ignored issues "are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."

Larrabee v. Smith, 14 F. Supp. 2d 235, 239 (N.D.N.Y. 1998), quoting Mayo v. Henderson, supra, 13 F.3d at 533; see Torres v. Irvin, 33 F. Supp. 2d at 257, 266 (S.D.N.Y. 1998) (Cote, D.J.).

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to

the conviction be rejected.  Strickland v. Washington, supra, 466 U.S. at 697.

Petitioner claims that his appellate counsel was ineffective for failing to assert that trial counsel was ineffective for failing to assert that the admission of Thompson's dying declarations violated the Confrontation Clause.  The fundamental problem with this argument is that at the time petitioner was tried, long standing Supreme Court precedent established that the admission of dying declarations did not violate the Confrontation Clause.  Mattox v. United States, 156 U.S. 237, 240-44 (1895). Admittedly, Crawford leaves some question as to the continuing vitality of Mattox.  See Crawford v. Washington, supra, 541 U.S. 56 at n.6.  Nevertheless, Crawford was not decided until March 2004, approximately seven months after petitioner's trial ended. Trial counsel was not ineffective because she was unable to predict the outcome of Crawford.  "'The Sixth Amendment does not require [appellate] counsel to forecast changes or advances in the law . . . .'"  Jameson v. Coughlin, 22 F.3d 427, 429-30 (2d Cir. 1994), quoting Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993); see Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009), cert. denied, 130 S.Ct. 1881 (2010) ("counsel cannot be deemed incompetent for failing to predict that a higher court would overrule its earlier precedent") (Internal quotation marks

omitted); <u>Lisojo v. Rock</u>, 09 Civ. 7928 (CM)(AJP), 2010 WL 1223086 at *33 (S.D.N.Y. Mar. 31, 2010) (Report & Recommendation)(Peck, M.J.), <u>adopted</u> <u>at</u>, 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010) (McMahon, D.J.) ("[T]he Sixth Amendment does not require counsel to presage changes in the law.").

  Because the Supreme Court precedent extant at the time of petitioner's trial unequivocally held that the admission of dying declarations did not run afoul of the Confrontation Clause, any objection by trial counsel during petitioner's trial would have been frivolous under the law existing at that time, and trial counsel was not ineffective for failing to make such an objection.  Because trial counsel's inability to predict a change in the law is not ineffective assistance, any appellate claim asserting such an argument would have been frivolous, and petitioner's appellate counsel's failure to assert such a claim does not constitute ineffective assistance.

E.   Summary

Thus, petitioner's claims concerning his allegedly excessive sentence and the Appellate Division's alleged abuse of interest-of-justice jurisdiction should be dismissed because they do not allege violations of federally protected rights and are not cognizable.  Petitioner's claims concerning the sentence imposed on him for criminal possession of a weapon in the third degree and the imposition of a DNA data bank fee should be dismissed because the Appellate Division already granted petitioner complete relief on these claims and they are moot. Petitioner's Confrontation Clause claim should be dismissed as procedurally barred.  Petitioner claim of ineffective assistance of appellate counsel should be dismissed because it fails on the merits.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied.

In addition, because Paul has not made a substantial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability,

"petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that Paul's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Colleen McMahon, United States District Judge, 500 Pearl Street,

Room 1350, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge McMahon.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        June 10, 2010

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Mr. Ahib Paul
DIN 03-A-5192
Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

Joshua F. Magri, Esq.
Assistant District Attorney
Bronx County
198 East 161st Street
Bronx, New York  10451